UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHAWN L. SCOTT,

           Plaintiff,        Civil Action No. 18-10261
                                Honorable Gershwin A. Drain
                                Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

           Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [13, 16]**

Plaintiff Shawn Scott ("Scott") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (Docs. #13, 16), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Scott is not disabled under the Act. Accordingly, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment (**Doc. #16**) be **GRANTED**, Scott's Motion for Summary Judgment (**Doc. #13**) be **DENIED**, and that pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be **AFFIRMED**.

**II.     REPORT**

    **A.     Background**

Scott was 50 years old at the time of his alleged onset date of December 12, 2014, and at 5'11" tall weighed approximately 205 pounds. (Tr. 199, 203). He completed the eighth grade but had no further education. (Tr. 47, 204). Over the years, he worked in various jobs, as a paint technician, maintenance man, and security guard, for example, before stopping work in 2006 because his temporary job ended. (Tr. 203, 236). He now alleges disability primarily as a result of back and knee pain, diabetes, and depression. (Tr. 53, 203, 211).

After Scott's application for SSI was denied at the initial level on August 26, 2015[1] (Tr. 119-26), he timely requested an administrative hearing, which was held on December 28, 2016, before ALJ Virginia Herring (Tr. 29-71). Scott, who was represented by attorney Clifford Walkon, testified at the hearing, as did vocational expert Pauline McEachin. (*Id.*). On March 29, 2017, the ALJ issued a written decision finding that Scott is not disabled under the Act. (Tr. 10-18). On December 18, 2017, the Appeals Council denied review. (Tr. 1-5). Scott timely filed for judicial review of the final decision on January 23, 2018. (Doc. #1).

The Court has thoroughly reviewed the transcript in this matter, including Scott's medical record, Function and Disability Reports, and testimony as to his conditions and resulting limitations. Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

---

[1] Scott had filed previous applications for Disability Insurance Benefits and SSI. Most recently, on December 13, 2013, ALJ Gerald Freeman issued a written decision finding that Scott was not disabled under the Act. (Tr. 89-98). On February 20, 2015, the Appeals Council denied review, and Scott did not appeal that claim any further. (Tr. 102-04).

## B. The ALJ's Application of the Disability Framework Analysis

Under the Act, SSI is available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Scott is not disabled under the Act. At Step One, the ALJ found that Scott has not engaged in substantial gainful activity since December 12, 2014 (the application date). (Tr. 12). At Step Two, the ALJ found that he has the severe impairments of lumbar facet arthropathy with bilateral S1 radiculopathy, diabetes mellitus with neuropathy, obesity, and depression. (*Id.*). At Step Three, the ALJ found that Scott's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 13).

The ALJ then assessed Scott's residual functional capacity ("RFC"), concluding that he is capable of performing light work, with the following additional limitations: requires a cane for ambulation; frequent balancing, stooping, kneeling, crouching, crawling, and climbing of stairs or ramps; no climbing of ropes, ladders, or scaffolds; and limited to only simple and routine tasks. (Tr. 14).

At Step Four, the ALJ found that Scott is not capable of performing any of his past relevant work. (Tr. 17). At Step Five, the ALJ determined, based in part on testimony provided by the vocational expert in response to hypothetical questions, that Scott is capable of performing the jobs of inspector (180,000 jobs nationally), hand packager (130,000 jobs), and bench assembler (125,000 jobs). (Tr. 17-18). As a result, the ALJ concluded that Scott is not disabled under the Act. (Tr. 18).

### C. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact

4

unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

**D.      Analysis**

In his motion for summary judgment, Scott argues that the ALJ erred in: (1) improperly

evaluating the opinion of his treating physician, Bruce Miller, M.D.; (2) failing to consider the effect of his use of a cane on his ability to perform light work; and (3) posing hypothetical questions to the vocational expert that did not account for all of his credible limitations. (Doc. #13 at 11-17). Each argument is addressed below.[2]

### 1. The ALJ Properly Evaluated Dr. Miller's Opinion

Scott first challenges the ALJ's evaluation of the August 2016 opinion of his primary care physician, Dr. Miller. (*Id.* at 11-14). The well-established treating physician rule "mandate[s] that the ALJ 'will' give a treating source's opinion controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (quoting 20 C.F.R. § 404.1527(c)(2)). "If the ALJ declines to give a treating source's opinion controlling weight, [the ALJ] must then balance the following factors to determine what weight to give it: 'the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source.'" *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)).

In the opinion at issue, dated August 22, 2016,[3] Dr. Miller indicated that Scott's

---

[2] Because Scott does not challenge the ALJ's evaluation of his alleged mental impairments, the Court will focus its discussion on evidence pertaining to his physical impairments.

[3] The same day, Dr. Miller also completed a separate "Medical Questionnaire," in which he opined that Scott is not capable of performing a full-time job due to his "limited ability to sit, stand, and walk for prolonged periods of time from lower back pain." (Tr. 448-49). Scott does not argue that the ALJ should have given any particular weight to this opinion, and, thus, any such claim is waived. *See Hollon ex. rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006). Moreover, such an argument would be meritless, as the ultimate issue of whether a claimant is disabled is an issue reserved to the Commissioner. *See, e.g., Cosma v. Comm'r of Soc. Sec.*, 652 F. App'x 310, 311 (6th Cir. 2016) ("The ALJ reasonably gave no weight to [the doctor's] opinion because her conclusion that [the plaintiff] is totally disabled is a determination reserved to the Commissioner ….").

6

diagnoses are diabetes mellitus with neuropathy and chronic back pain. (Tr. 444). Dr. Miller further indicated that Scott can stand or walk only one hour in an eight-hour workday; cannot lift more than five pounds; and requires a cane or other assistive device for occasional standing or walking. (Tr. 444-45). He further opined that Scott has postural limitations, including the fact that he can never stoop, crouch, or climb ladders, and can rarely twist or climb stairs. (Tr. 446).

The ALJ discussed Dr. Miller's opinion but assigned it "little weight because he had only treated [Scott] on two occasions and relied mostly upon his subjective complaints." (Tr. 16). Both of the reasons articulated by the ALJ for discounting Dr. Miller's opinion find support in the record. For example, the ALJ correctly noted that, at the time Dr. Miller issued his opinion, on August 22, 2016, he specifically noted that he had seen Scott only twice – once "in June 2016 and today." (Tr. 16, 444; *see also* Tr. 833-37 (Dr. Miller's treatment notes from June 7, 2016), 815-20 (Dr. Miller's treatment notes from August 22, 2016)). It was entirely reasonable for the ALJ to discount Dr. Miller's opinion based on his limited treatment of Scott. *See* 20 C.F.R. § 416.927(c)(2)(i) (ALJ properly considers the "[l]ength of the treatment relationship and the frequency of examination").[4] Indeed, Dr. Miller's lack of familiarity with Scott is particularly notable given that, at the time Dr. Miller rendered his opinion, he appears to have been misinformed about the treatment Scott had undergone for his back pain. Specifically, Dr. Miller noted that Scott reportedly "had 2 surgeries for [his] back," though Dr. Miller had "no records" and was "just starting" to treat Scott with Gabapentin for pain. (Tr. 444). As the ALJ noted, there is no medical evidence in the record that Scott had back surgery. (Tr. 15). Thus, the ALJ

---

[4] One of Scott's arguments is that the ALJ erred in failing to consider other, unspecified "regulatory factors" when evaluating Dr. Miller's opinion. (Doc. #13 at 12). Contrary to Scott's contention, however, an ALJ is not required to expressly address each factor set forth in 20 C.F.R. § 416.927(c) when weighing opinion evidence. *See, e.g., Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 785 (6th Cir. 2017) ("The ALJ need not perform an exhaustive, step-by-step analysis of each factor; she need only provide 'good reasons' for both her decision not to afford the physician's opinion controlling weight and for her ultimate weighing of the opinion.").

7

reasonably discounted Dr. Miller's opinion when he had seen Scott only twice at the time the opinion was issued, had only begun treating Scott's symptoms, and was apparently misinformed about Scott's history of treatment for back pain.

The ALJ also discounted Dr. Miller's opinion because it was based "mostly upon [Scott's] subjective complaints." (Tr. 16). Specifically, Dr. Miller attributed Scott's lifting and standing/walking restrictions to reported back pain, and repeatedly referred to multiple back surgeries. (Tr. 444-45, 448-49). Again, however, Dr. Miller acknowledged that he "ha[d] no records" of the surgeries and was just beginning treatment with medication. (Tr. 444). As the ALJ emphasized, aside from Scott's own reports, there is no evidence he had back surgery – just a history of injections. (Tr. 15, 203, 817, 835; *see also* Tr. 730 (in which Dr. Miller subsequently noted in December 2016 that, contrary to his prior understanding, Scott was being considered "for epidural injections and not surgery")). Thus, it was both reasonable and proper for the ALJ to discount Dr. Miller's opinion as being based primarily upon Scott's subjective complaints. *See* 20 C.F.R. § 416.927(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion."); *see also Mitchell v. Comm'r of Soc. Sec.*, 330 F. App'x 563, 569 (6th Cir. 2009) ("A doctor's report that merely repeats the patient's assertions is not credible, objective medical evidence and is not entitled to the protections of the good reasons rule.").

Moreover, reading the ALJ's decision as a whole, she discussed additional evidence that is inconsistent with the severe limitations set forth in Dr. Miller's opinion. For example, the ALJ noted that Scott underwent only conservative treatment, such as a TENS unit, back brace, cane, and trigger point injections. (Tr. 15 (citing Tr. 379-406, 423-41)). *See Byberg v. Comm'r of*

8

*Soc. Sec.*, 2013 WL 1278397, at *9 (E.D. Mich. Mar. 11, 2013) (describing "occasional injections, mild pain medication, and use of a TENS unit" as "very conservative routine treatment"). Similarly, the ALJ noted Scott's testimony that he engaged in activities inconsistent with Dr. Miller's limitations, such as walking two miles every morning, lifting his 30-pound grandson, grocery shopping, doing laundry, and caring for his own personal needs. (Tr. 15-16, 39-44, 50-52, 54). *See Francis v. Comm'r Soc. Sec. Admin.*, 414 F. App'x 802, 806 (6th Cir. 2011) (the ALJ properly considered the plaintiff's daily activities in discounting treating physician's opinion). The ALJ also noted that Scott's physical examinations were "mostly unremarkable" (Tr. 15), an observation that finds ample support in the record (*e.g.*, Tr. 415, 418, 421, 876, 922). Finally, the ALJ considered the fact that, at times, Scott denied back pain to providers, and he testified at the hearing that he had not taken pain medication in five months or had injections in two years. (Tr. 15, 49, 414, 417, 420, 875, 921). These too were proper considerations. *See* 20 C.F.R. § 416.927(c)(6) (ALJ properly considers "any factors" which "tend to support or contradict the medical opinion").

Despite all of the evidence cited by the ALJ, Scott now raises a few specific challenges to the ALJ's analysis, which, in large part, simply amount to an improper invitation for this Court to reweigh the evidence. (Doc. #13 at 12-14). *See Mullins v. Sec'y of Health & Human Servs.*, 680 F.2d 472, 472 (6th Cir. 1982) ("Our task is not to reweigh the evidence. That is solely the province of the [Commissioner]."). First, Scott asserts that, "The ALJ never mentions treatments for pain since the [2013 ALJ] decision including trigger point injections and use of a TENS unit." (Doc. #13 at 12 (citations omitted)). But this is simply incorrect, as the ALJ explicitly discussed such treatments in her decision, many of which took place after the 2013 ALJ decision. (Tr. 15 ("He used a TENS unit, back brace, and cane in addition to undergoing a series

9

of trigger point injections[.]"). Scott also cites to a February 2014 EMG, which showed "bilateral sensory motor peripheral polyneuropathy and bilateral S1 radiculopathy[.]" (Doc. #13 at 12 (citing Tr. 396)). But, the ALJ noted both of these diagnoses in her decision (Tr. 15), and, more importantly, the mere existence of an impairment for which the claimant receives treatment does not necessarily establish that the condition imposes disabling functional limitations. *See Sparks v. Comm'r of Soc. Sec.*, 2015 WL 5210463, at *9 (E.D. Mich. Aug. 31, 2015) ("[T]he mere diagnosis of an impairment is not enough to show disability; a claimant must also prove its severity and functional impact."). Thus, Scott's citation to these pieces of medical evidence does not demonstrate error in the ALJ's evaluation of Dr. Miller's opinion.

Scott also takes issue with the ALJ's observation that his diabetes is "mostly controlled with medication" (Tr. 15), pointing to instances where it was uncontrolled, as well as evidence of diabetes-related complications of peripheral neuropathy and lesions on his left foot. (Doc. #13 at 13 (citing Tr. 418, 423, 425, 428, 431, 491, 514-33)). But, there is also medical evidence in the record supporting the ALJ's finding that Scott's diabetes was controlled (Tr. 491, 493, 494), and, to the extent this condition was uncontrolled on occasion, the Court notes that there is evidence in the record that, at times, he was noncompliant with his insulin and/or diet (Tr. 479, 482). Moreover, Scott testified at the hearing that his diabetes is controlled with medication and that, despite his impairments, he is able to "walk around two miles" each morning, take his grandson to the park and "kick around," shop for groceries, and do laundry. (Tr. 15, 39-40, 42-45). The ALJ limited Scott to light work with the use of a cane while ambulating, which is consistent with Scott's own testimony as to his physical capabilities. (Tr. 14-16, 39-40, 42-44). Again, it is the ALJ's duty to resolve conflicts in the evidence, and the mere presence of some evidence that conflicts with the ALJ's decision does not mean the ALJ's decision is not

supported by substantial evidence or that remand is required; to the contrary, where the ALJ's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip*, 25 F.3d at 286. Here, for all of the reasons set forth above, the ALJ reasonably determined that the evidence as a whole, including Scott's treatment notes and testimony, was inconsistent with Dr. Miller's opinion. *See Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004). Thus, the Court finds no error in the ALJ's evaluation of the medical opinion evidence.[5]

### 2. *The ALJ Properly Considered Scott's Use of a Cane on His Ability to Perform Light Work*

Scott next argues that because he must use a cane, the ALJ erred in concluding that he can perform light work, as defined in the regulations. (Doc. #13 at 14-16). In relevant part, the regulations define light work as involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b). The regulations further provide that a job may be characterized as "light" on the basis that it involves a "good deal of walking or standing," or "sitting most of the time with some pushing and pulling of arm or leg controls." *Id.* Thus, courts have recognized that there is no *per se* rule that use of a cane to ambulate precludes performance of all light jobs. *See Scott v. Comm'r of Soc. Sec.*, 2015 WL 4634077, at *6 (E.D. Mich. July 6, 2015) ("Plaintiff's argument presumes that the need for a cane or other assistive device entirely precludes his ability to perform light work…. In this case,

---

[5] Scott also challenges the ALJ's decision to give "some weight" to the opinion of the state agency reviewing physician, Muhammad Khalid, M.D., claiming that the ALJ ignored the fact that Dr. Khalid – who issued his opinion in August 2015 – did not review the entire record. (Doc. #13 at 13-14). But, where Scott does not identify any evidence submitted after August 2015 that he believes would have changed Dr. Khalid's opinion, he has not shown any error in the ALJ's weighing of this opinion. *See Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1002 (6th Cir. 2011) ("There is no categorical requirement that the non-treating source's opinion be based on a 'complete' or 'more detailed and comprehensive' case record.").

however, the vocational expert specifically testified that there were 30,000 light jobs available that plaintiff could perform while using a cane for standing and walking."); *see also Koehn v. Comm'r of Soc. Sec.*, 2017 WL 3612872, at *8 (E.D. Mich. July 18, 2017).

Indeed, Social Security Ruling ("SSR") 83-14, which addresses light work, does not state that the use of a cane would preclude light work.[6] *See Soc. Sec. Rul. 83-14*, 1983 WL 31254, at *4 (Jan. 1, 1983). It simply states that "most" light jobs "require a person to be standing or walking most of the workday," and the "full range" of light work requires "frequent lifting or carrying of objects weighing up to 10 pounds[.]" *Id.* The Ruling further provides that, as a result, a limitation in such functional abilities "must be considered very carefully to determine its impact on the size of the remaining occupational base of a person who is otherwise found functionally capable of light work." *Id.*

Here, the ALJ undertook this careful consideration, specifically questioning the vocational expert ("VE") as to whether Scott's use of a cane would affect his ability to perform light work. In response to such questions, the VE testified that an individual with Scott's RFC – which includes light work with the use of a cane for ambulation – can perform the representative occupations of inspector, hand packager, and bench assembler, all of which are available in significant numbers in the national economy. (Tr. 60-61). The ALJ then asked a follow-up question to confirm that these jobs can be performed "even though the use of a cane is required for walking[,]" to which the VE answered that the jobs identified "do not require walking[.]" (Tr. 61). Thus, the VE testified clearly that Scott can perform a variety of jobs in the light work

---

[6] In his motion (Doc. #13 at 14), Scott cites to SSR 96-9p, which addresses sedentary work, and explains that when a hand-held assistive device is medically required, "it may be especially useful to consult a vocational resource … regarding the individual's ability to make an adjustment to other work." *Soc. Sec. Rul. 96-9p*, 1996 WL 374185, at *7 (July 2, 1996). Here, where the ALJ did in fact consult a vocational expert to determine whether the use of a cane affected Scott's ability to perform light work, Scott's reliance on this Ruling is unavailing.

12

category, despite the need to use a cane for ambulating, and the Court finds no error warranting remand.[7]

### 3. The ALJ's Hypothetical to the VE Was Adequate

Lastly, Scott argues that the ALJ erred in failing to provide the VE with a "hypothetical question which accurately portray[ed his] physical and mental limitations." (Doc. #13 at 16). Although Scott phrases this as a Step Five challenge, it is clear that, because the ALJ's RFC finding (Tr. 14) is identical to the hypothetical question he posed to the VE (Tr. 60-61), Scott is actually attempting to challenge the RFC finding via a purported Step Five error. *See Kirchner v. Colvin*, 2013 WL 5913972, at *11 (E.D. Mich. Nov. 4, 2013) ("Kirchner's Step Five argument is a veiled attack on the ALJ's underlying RFC finding" because "this is not a scenario where the ALJ's hypothetical failed to match up to the RFC he ultimately imposed."). As set forth above, however, the ALJ's assessment of the medical evidence and subsequent RFC finding are supported by substantial evidence. Accordingly, Scott's argument that the ALJ provided the VE with an inaccurate hypothetical lacks merit.

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

---

[7] Scott cites *Love v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 893 (W.D. Mich. 2009), in support of his argument that his need to use a cane while ambulating precludes light work. (Doc. #13 at 15). In *Love*, the Court rejected the ALJ's finding that the claimant had the RFC to "lift *and carry* up to 20 pounds occasionally and 10 pounds frequently," while also requiring a hand-held device to ambulate. *Id.* at 907 (emphasis added). In doing so, the Court found it illogical that an individual can carry 20 pounds if he requires a cane to ambulate. But, this Court has distinguished the RFC in *Love* from cases – like this one – involving an RFC for light work as defined by the Commissioner's regulations, that does *not* require *carrying* 20 pounds. *See Latham v. Comm'r of Soc. Sec.*, 2016 WL 11260314, at *8 (E.D. Mich. Dec. 27, 2016) (explaining that *Love* says nothing about the logic of the limitation of the use of a cane to ambulate and a limitation of carrying up to 10 pounds, and upholding the assessed RFC for light work with use of a cane for ambulation). Here, where the VE testified that the three jobs identified – hand packager, inspector, and bench assembler – do not require walking (Tr. 61), they necessarily do not require *carrying*. Thus, *Love* is inapposite.

13

### III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment (**Doc. #16**) be **GRANTED**, Scott's Motion for Summary Judgment (**Doc. #13**) be **DENIED**, and the ALJ's decision be **AFFIRMED**.

Dated: November 5, 2018  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## **CERTIFICATE OF SERVICE**

      The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 5, 2018.

                                            s/Eddrey O. Butts
                                            EDDREY O. BUTTS
                                            Case Manager